TOWN OF PELHAM, Respondent, *v.* CITY OF MOUNT VERNON, Appellant.

Argued January 16, 1952; decided April 17, 1952.

*Harold ·Borgwald, Corporation Counsel* (*William Macy, Walter B. Solinger, II,* and *Louis R. Pagano* of counsel), for appellant.   I. Plaintiff and defendant never entered into an agreement to maintain the bridge in proportion to their respective assessed valuations.   (*Potomac Ins. Co. v. Kelly,* 173 App. Div. 791; *Lapham v. Rice,* 55 N. Y. 472; *People ex rel. Canton Bridge Co. v. Board of Town Auditors of Town of Horicon,* 136 App. Div. 166, 204 N. Y. 609.)   II. If plaintiff's contention is sustained,·an illegal contract will be forced upon the parties. (*Macrum v. Hawkins,* 261 N. Y. 193.)   III. The parties have, since the construction of the bridge, shared the cost of maintenance equally and their course of dealing for thirty-five years constitutes a bar to a recovery as prayed for by plaintiff. IV. The City of Mount Vernon never received any money from the Town of Pelham and is not liable for money paid to a third party.   (*National Trust Co. v. Gleason,* 77 N. Y. 400; *Crawford Clothes, Inc., v. Kaufman-8th Ave. Corp.,* 106 N. Y. S. 2d 609.)   · V. Assuming that the two 1914 resolutions ripened into a contract, both respondent and appellant abandoned it before any maintenance charges were incurred, and deliberately proceeded to contract for joint maintenance under the Highway Law. (*Green v. Doniger,* 300 N. Y. 238; *McCreery v. Day,* 119 N. Y. 1.) VI. Section 61 of the County Law did not supersede the provisions of the Highway Law with respect to bridge maintenance. It created a permissive method only, leaving towns and cities free to maintain bridges under the Highway Law.   (*Lapham v. Rice,* 55 N. Y. 472; *People ex rel. Canton Bridge Co. v. Board of Town Auditors of Town of Horicon,* 136 App. Div. 166, 204 N. Y. 609; *Matter of Town of Saratoga,* 160 App. Div. 60, 211 N. Y. 543.)

*Emanuel Schwartz, Town Attorney,* for respondent.   I. The proper division of operation and maintenance costs is in proportion to assessed valuations.   (County Law, § 61; *Seif v. City of Long Beach,* 286 N. Y. 382; *Argus Co. v. Mayor, Aldermen & Commonalty of City of Albany,* 7 Lans. 264, 55 N. Y. 495; *Peterson v. Mayor of City of N. Y.,* 17 N. Y. 449; *Salmon v. Rochester & Lake Ontario Water Co.,* 120 Misc. 131; *New Paltz, H. & P. Traction Co. v. County of Ulster,* 202 App. Div. 234, 236 N. Y. 630; *Boom v. City of Utica,* 2 Barb. 104; *McClos-*

key v. *City of Albany,* 7 Hun 472; *New York City Employees' Retirement System* v. *Eliot,* 267 N. Y. 193; *Matter of Town of Rutland,* 70 Misc. 82.) II. Respondent is entitled to recover excessive payments. (*T. J. W. Corp.* v. *Board of Higher Educ. of City of N. Y.,* 251 App. Div. 405, 276 N. Y. 644; *Ball* v. *Shepard,* 202 N. Y. 247; *New York City Employees' Retirement System* v. *Eliot,* 267 N. Y. 193; *People* v. *Fields,* 58 N. Y. 491; *Board of Supervisors of Richmond Co.* v. *Ellis,* 59 N. Y. 620; *Village of Fort Edward* v. *Fish,* 156 N. Y. 363; *Aspinwall* v. *Sacchi,* 57 N. Y. 331; *Exchange Mut. Ind. Ins. Co.* v. *Zurich Gen. Accident, Fire & Life Ins. Co.,* 122 Misc. 386, 214 App. Div. 713; *Asylum of St. Vincent de Paul* v. *McGuire,* 239 N. Y. 375.)

Lᴇᴡɪs, J. A controversy between the plaintiff-appellant, Town of Pelham, and the defendant-respondent, City of Mount Vernon, was submitted to the Appellate Division on an agreed statement of facts. (Civ. Prac. Act, §§ 546–548.) Upon that submission a nonunanimous order of the Appellate Division directed judgment in favor of the plaintiff. The case comes to us upon appeal by the defendant as of right.

In those circumstances, the scope of our review is limited to the stipulated facts and no others. (*Manhattan Stor. & Warehouse Co.* v. *Movers Assn.,* 289 N. Y. 82, 86.) Stated otherwise: we may determine legal consequences flowing from the agreed facts but in so doing we may not find additional facts — " * * * even if the submitted facts logically and reasonably admit of further important inferences which a trier of the fact might very well draw." (*Cohen* v. *Manufacturers Safe Deposit Co.,* 297 N. Y. 266, 269; and see *Feist* v. *Fifth Ave. Bank,* 280 N. Y. 189, 190; *Title Guar. & Trust Co.* v. *Mortgage Comm.,* 271 N. Y. 302, 305.)

The question presented for determination is the share each of the two litigants must pay to meet the cost of maintenance and repair of a bridge which now connects those two municipalities.

As to agreed facts: The bridge involved spans the Hutchinson River (Eastchester Creek) — a navigable stream — at a point in Westchester County where that stream forms the boundary line between the Town of Pelham and the City of Mount Vernon. The bridge also serves to connect two highways — South Fulton Avenue in the City of Mount Vernon and Pel-

ham Parkway in the Town of Pelham — each of which highways leads to the Hutchinson River. In 1900, pursuant to statutory provisions then effective, the two municipalities built a bridge over the Hutchinson River which was condemned in 1911 by the United States War Department. Thereafter, in the same year, a petition, signed by not less than twenty-five taxpayers, was presented to the Board of Supervisors of the County of Westchester requesting the county to construct a new bridge. Thereupon the Board of Supervisors adopted a resolution that such bridge be constructed, and in 1913 the United States Secretary of War authorized the construction of a county bridge over the Hutchinson River between the Town of Pelham and the City of Mount Vernon.

On January 28, 1914, the Westchester County Board of Supervisors by formal resolution authorized the presentation to the Legislature of an amendment to section 61 of the County Law which would provide that where a county constructs a bridge over a stream which is the boundary line between two municipalities, the latter may agree with the county to maintain such bridge jointly, in proportion to the assessed valuation of the municipalities. On March 30, 1914 — before the amendment to section 61 of the County Law (L. 1914, ch. 233, eff. April 8, 1914) became effective — the Common Council of the City of Mount Vernon adopted a resolution providing in part: " Resolved * * * that in the event of a bridge being constructed over the navigable inlet from Long Island Sound, separating the City of Mount Vernon from the Town of Pelham * * * at the expense of the County of Westchester, that the City of Mount Vernon will upon the construction and completion thereof assume the care and management of such bridge in conjunction with the Town of Pelham, and will pay its proportionate share of the expenses of the care and maintenance of said bridge thereafter."

On April 1, 1914 — before the 1914 amendment to section 61 of the County Law became effective — the Town Board of Pelham adopted a resolution providing in part:

" Whereas an amendment to Section 61 of the County Law has been enacted by the Legislature of this state, permitting municipalities to contract with counties for the maintenance and repair of bridges built at County expense; and

" Whereas the Board of Supervisors of Westchester County now propose to build said bridge * * * upon the consideration and condition that said municipalities of Mount Vernon and Pelham enter into a contract with the County of Westchester for the maintaining and repairing of said bridge after completion;

" Now therefore, be it resolved: That the Supervisor and Town Clerk of Pelham be and hereby are *authorized* to execute such an agreement on behalf of the Town of Pelham." (Emphasis supplied.)

By chapter 233 of the Laws of 1914, the Legislature amended section 61 of the County Law — effective April 8, 1914 — to provide in part as follows: " * * * In case the bridge is constructed over a stream forming the boundary line between two towns or two cities or between a town and city, then they *may agree* with the county to operate and maintain such bridge jointly, in proportion to the assessed valuation of such town or city. * * * " (Emphasis supplied.)

On April 13, 1914, the Westchester County Board of Supervisors adopted a resolution which — after reciting that the above-mentioned amendment to section 61 of the County Law had become effective, and that the two municipalities " have expressed their willingness to enter into an agreement to maintain and operate a bridge over the Hutchinson River " in the event the county construct it — authorized the county to execute a contract for the construction of the bridge.

We think it clear that the two resolutions, last quoted above, adopted by the municipalities which are parties to this action, plus the extract from the resolution of April 13, 1914, by the Westchester County Board of Supervisors, indicate that, while the parties were *authorized* by such resolutions to execute some sort of an agreement with respect to the maintenance of the bridge, the resolutions did not themselves constitute such an agreement. Upon that subject the agreed facts contain the following statement: " That no written agreement among the plaintiff, defendant and the County of Westchester pursuant to County Law, Section 61, has been located and neither party has any knowledge or information that any such instrument was ever executed or prepared."

The agreed facts further show that the corporation counsel of Mount Vernon in 1910 and the town attorney of Pelham in 1914 rendered an opinion that each municipality was obligated to pay one half the cost of operation and maintenance of the bridge, and that thereafter — for a period of "many years" the plaintiff and defendant "shared the cost of operation and maintenance of the new bridge in equal proportions." When repairs to the bridge were made in 1923, 1932, 1938 and 1947 one half the cost thereof was paid by each municipality, pursuant to resolutions passed by their respective appropriate bodies. Likewise, when traffic lights were installed in 1945, the cost was shared equally by Mount Vernon and Pelham; and "For many years" the wages paid to bridge tenders who operated the bridge for twenty-four hours a day were paid in equal shares by the two municipalities.

Finally, there came a time in June, 1949, when the bridge was damaged, and "extensive repairs" were required to restore it. Then, for the first time, the Town of Pelham contended that the cost to the two municipalities for the expense of maintenance and repairs to the bridge should not be shared equally — as it had been shared for thirty-five years — but should be determined in proportion to the assessed valuation respectively of the two municipalities. The agreed facts advise us that the assessed valuation of property in the Town of Pelham is "substantially less" than property in the City of Mount Vernon.

As plaintiff in this action, the Town of Pelham contends it is entitled to judgment declaring that the bridge was built pursuant to section 61 of the County Law, and that it should share with the City of Mount Vernon the cost of maintenance and repairs thereof in proportion to the assessed valuation of property in each of the two municipalities. The relief sought by the Town of Pelham also includes its demand for an accounting by the City of Mount Vernon for past overpayments, if any, in excess of its proper share of the cost of maintenance and repair of the bridge since its construction, and that the defendant pay to the plaintiff the amount of such overpayments.

The defendant, City of Mount Vernon, contends that it is entitled to judgment declaring that, pursuant to section 232 of the Highway Law, the expense of maintaining the bridge and the cost of repairs thereto should be borne equally by the parties.

It was the view of a majority of the Appellate Division that — '' Although no formal contract was entered into by and between the county and the two municipalities with respect to mainte- nance costs, the resolutions quoted above must be held to be the agreements contemplated by section 61. The fact that there- after the municipalities divided such costs equally between them does not preclude the plaintiff from maintaining this action and recovering from the defendant the amount paid in excess of its ratable share by way of contribution, the excess representing part of the obligation of the defendant.'' (278 App. Div. 79, 84.) Having reached that conclusion, the Appel- late Division by its order — the Presiding Justice dissenting — directed that, within limits fixed by the six-year Statute of Limitations, the plaintiff is entitled to judgment directing that the parties to this action share the cost of maintenance and repair of the bridge in proportion to the respective assessed property valuations and that plaintiff is entitled to recover the amount expended in excess of such share, with interest, and to have the defendant account therefor.

The following considerations have led us to a contrary con- clusion: As already noted, the 1914 amendment to section 61 of the County Law (L. 1914, ch. 233) — upon which the Appel- late Division decision rests — provides that two municipalities '' *may* agree *with the county* to operate and maintain such bridge jointly, in proportion to the assessed valuation of such town or city.'' (Emphasis supplied.) Although, pursuant to that statute, the parties hereto could have entered into an agree- ment for the joint maintenance and repair of the bridge and thereby could have arranged for the assumption of the cost thereof in proportion to the assessed valuation of properties within their limits respectively, they have chosen consistently throughout a period of thirty-five years to do otherwise. In that connection it is significant that the agreed facts contain no statement that the payments made by the parties between 1914 and 1949, when they shared equally the cost of maintenance and repair of the bridge, were due to a mistake of either law or fact. In view of that circumstance, we may not infer that such pay- ments — made on the basis of equality instead of being in accord with the formula prescribed by section 61 *id.*— were made as a

result of mistake. (*Cohen* v. *Manufacturers Safe Deposit Co.,
supra,* p. 269; *Matter of Morrissey* v. *New York State Employ-
ees' Retirement System,* 298 N. Y. 442, 450.) Thus by practical
construction the parties to this action have demonstrated that
they did not intend by contract to apportion the cost of main-
tenance and repair pursuant to the statutory formula mentioned
above. There is distinguished authority for the simple state-
ment — " There is no surer way to find out what parties meant,
than to see what they have done." (*Insurance Co.* v. *Dutcher,*
95 U. S. 269, 273.)

Mindful of the fact that each of the 1914 resolutions — which
a majority of the Appellate Division has construed to constitute
an agreement contemplated by section 61 of the County Law —
was adopted before April 8, 1914 (the effective date of the
statute), we think the resolution of March 30, 1914, by the Com-
mon Council of the City of Mount Vernon amounts to no more
than authorization by that body to the end that, upon comple-
tion by the County of Westchester of the bridge here involved,
the city would assume the care and management of such bridge
jointly with the Town of Pelham and would thereafter pay its
proportionate share of the cost of such maintenance and repair.
We also construe the resolution of April 1, 1914, by the Town
Board of Pelham as being no more than an *authorization* to the
supervisor and the town clerk *to execute an agreement* for the
maintenance and repair of such bridge after its completion by
the County of Westchester. In our opinion, those 1914 resolu-
tions, in and of themselves, do not constitute an agreement
" with the county " as contemplated by section 61 of the County
Law. Our conclusion in that regard is reinforced by the agreed
fact, already noted, that " no written agreement among the
plaintiff, defendant and the County of Westchester pursuant to
County Law, Section 61, has been located and neither party
has any knowledge or information that any such instrument was
ever executed or prepared." There is nothing in the 1914 reso-
lutions, nor in the agreed statement of facts which, in our
view, justifies the plaintiff's claim that since 1914 it had a con-
tractual right to contribution by the City of Mount Vernon based
upon the formula prescribed by section 61 *id.* The agreed facts,
including as they do uniform and unquestioned acts of the

parties over a long period of years when — although prompted by natural self-interest — they shared equally the cost of maintenance and repair of the bridge, has led us to a contrary conclusion. (See *Carthage Tissue Paper Mills* v. *Village of Carthage,* 200 N. Y. 1, 14; *Morehouse* v. *Woodruff,* 218 N. Y. 494, 502–503.)

Although the stipulated facts disclose no agreement between the parties hereto and the County of Westchester pursuant to section 61 of the County Law as amended in 1914, we think the equal apportionment of the cost of maintenance and repair — which apportionment they adopted and applied from 1914 to 1949 and involved payments voluntarily made for a lawful purpose — was sanctioned by section 250 (now § 232) of the Highway Law. That statute, which makes provision for meeting the cost of construction and maintenance of bridges over waters lying within townships or along any boundary thereof, provides in part: " * * * When such bridges are constructed over streams or other waters forming the boundary line between a city of the third class and a town, such city and town shall be liable each to pay its just and equitable share of the expenses for the construction, maintenance and repair of such bridges. * * * "

There is agreement that the City of Mount Vernon from 1914 to 1949 was a city of the third class. From that fact it follows, within the language of the statute last quoted above, that from 1914 to 1949 each of the parties to this action was liable to pay its " just and equitable share " of the cost of maintenance and repair of the bridge which spans a stream forming the boundary line between the two municipalities. As the agreed facts do not advise us of objection by either municipality to the equal apportionment of expense which they chose to adopt from 1914 to 1949, we cannot say as a matter of law that such apportionment did not meet the statutory requirement of being " just and equitable ". The division of such expense incurred since July, 1949 — when the Town of Pelham first refused to apply thereto the equal apportionment formula — may be the subject of agreement by the parties pursuant to section 131-b of the Highway Law (formerly County Law, § 61). An alternative statutory basis for sharing such expense is also made available by sections 232, 235 and 274 of the Highway Law.

Accordingly, the judgment of the Appellate Division should be reversed, without costs, and judgment ordered declaring that the parties hereto share equally the cost of maintenance and repair of the bridge involved, until such time as other provision therefor shall be made pursuant to statutes then applicable.

DESMOND, J. (dissenting). The parties agree that they are, together, obligated to maintain and repair the bridge described in the opinion of Judge LEWIS. They differ, however, as to the share of such cost which each must pay, and they have, by this submitted controversy on agreed facts, tendered to the courts the question as to whether each must pay half, or whether these expenses are to be borne by the two municipalities in proportion to their assessed valuations. We think the problem is answered by this: since this bridge was built *by the county* over a stream forming the boundary between plaintiff town and defendant city, the only statute bearing on the obligations of plaintiff and defendant to maintain the structure, is the 1914 (chapter 233 of that year) amendment to what was then section 61 of the County Law and is now section 131-b of the Highway Law. That enactment, which not only covers this situation but was passed to provide for the maintenance of this particular bridge, reads in part as follows: " In case the bridge is constructed over a stream forming the boundary line between two towns or two cities or between a town and city, then they may agree with the county to operate and maintain such bridge jointly, in proportion to the assessed valuation of such town or city." Since this plaintiff town and this defendant city agree that they are, between them, required to pay these costs, the measure of their respective contributions must be found in the above-quoted statute. Section 232 of the Highway Law has nothing to do with this bridge, although it did apply to bridges (like the one replaced by the one here directly involved) *built by a town and a city* over a stream forming the boundary between them.

The majority opinion here holds that the three resolutions, passed by the town, city and county respectively, and quoted in the majority opinion, did not constitute the agreement required by the above-quoted language of section 131-b. We think those resolutions have that meaning and effect, and that, despite any imperfections of language, they could mean nothing else.

The county, as shown by the April 13, 1914, resolution of its Board of Supervisors, determined to build this bridge at county expense, on the faith of the two resolutions theretofore passed by the town and city, each of which authorized an agreement to share maintenance costs in proportion to assessments. The county was not required by any statute to replace this bridge, and building it, in reliance on the town and city resolutions, constituted an acceptance by the county of an offer so made by the town and city. There is nothing to the contrary in the submitted facts.

If it were the law — and we do not agree that it is — that a formal written agreement was necessary, then the submission of controversy here is itself incomplete and equivocal, and would require a dismissal of the cause (see *Marx* v. *Brogan,* 188 N. Y. 431, 437; *1165 Fifth Ave. Corp.* v. *Alger,* 288 N. Y. 67, 71), since the submission goes only so far as to say that no copy of any such formal writing has been found, and leaves open to inference, if the fact be material, whether or not such a document was ever signed.

The legal opinions rendered by the corporation counsel of Mount Vernon in 1910, and by the town attorney of Pelham in 1914, have no bearing whatever on this controversy, although mentioned in the submission, since each of those opinions concerns maintenance costs on the old bridge, to which section 232 (*supra*) of the Highway Law applied, and which old bridge was replaced by the bridge we are concerned with here, which was built at county expense and not completed until 1916, as the submission shows.

The judgment should be affirmed, without costs.

CONWAY, DYE and FROESSEL, JJ., concur with LEWIS, J.; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., and FULD, J., concur.

Judgment reversed, etc. [See 304 N. Y. 594.]