**Francis Edwin TYLER, Herbert E. Stutchbury, Loren W. Van Derlyn, Edward G. Beald, John C. Christopher and Richard Cane, Plaintiffs,**

v.

**NEW YORK TELEPHONE COMPANY, American Telephone and Telegraph Company and Bankers Trust Company of New York, Defendants.**

United States District Court
S. D. New York.
March 9, 1961.

Mayer, Weiner & Mayer, New York City, for plaintiffs. Abraham Weiner, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendants New York Tel. Co. and American Tel. & Tel. Co. Ralph M. Carson, New York City, of counsel.

White & Case, New York City, for defendant Bankers Trust Co. of New York. Halburton Fales, II, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

I. Nature of the Case

Plaintiffs are all retired employees [1] of the defendant New York Telephone Company. Their claim involves the construction of a non-contributory pension plan instituted by the company in 1913 for the benefit of its employees.[2] This plan provides for pension payments to be made to employees who retire upon reaching a certain age and after being employed by the company for a requisite number of years. Since 1940, the company has deducted amounts attributable to its statutory contributions to the Federal Social Security program from the payments made pursuant to the pension plan. The plaintiffs claim that these deductions violate the terms of the pension plan as originally established in 1913, and as amended in 1914. They seek an accounting of the funds which have heretofore been deducted from their pension-plan payments, and an injunction against any future deductions from these payments.

Plaintiffs contend that the pension plan, as established in 1913 and modified in 1914, created, at that time, vested rights in the employees to the full amount of payments as then authorized by the plan, and that these benefits cannot therefore be limited without the consent of the employees. Thus, the plaintiffs argue that the subsequent deductions constitute an infringement of their contractual rights.

The company, on the other hand, contends (1) that the deductions for Social Security payments were in fact anticipated and authorized by provisions in the 1913 and 1914 plans, and in any event that the company's construction of the

1. The dates of employment and the dates of retirement for the plaintiffs are as follows:

| Name of Plaintiff | Date of Employment | Date of Retirement |
| --- | --- | --- |
| Francis Edwin Tyler | October 15, 1905 | April 30, 1950 |
| Herbert E. Stutchbury | September 12, 1921 | May 31, 1953 |
| Loren W. Van Derlyn | October 9, 1904 | October 31, 1943 |
| Edward G. Beald | September 10, 1911 | July 31, 1943 |
| John C. Christopher | November 14, 1909 | February 8, 1955 |
| Richard Cane | June 15, 1896 | August 31, 1940 |

2. No independent relief is being sought against the Bankers Trust Company, which was joined as defendant since it is the trustee of the pension fund involved in the litigation. The action was discontinued against the American Telephone and Telegraph Company during the course of the trial.

plan has been accepted for many years by its employees, including the plaintiffs in this action; (2) that the plan is merely a gratuity offered by the company, or at best an offer for a unilateral contract, and that rights vest, if at all, only upon retirement of the employee in question; and (3) that the relief sought by the plaintiffs is barred by laches and by the six-year New York statute of limitations. Civil Practice Act, § 48.

## II. The Facts

The basic facts involved in this litigation are not in dispute. The company first instituted its pension plan on January 1, 1913. The Employees' Benefit Committee was established, to consist of five members appointed from management personnel by the company's Board of Directors. The plan empowered the committee to determine all questions arising in its administration. The original plan contained two sections, Section 9(32) and Section 13, which are most relevant to this litigation. Section 9(32) provided:

"In case any employee or his beneficiaries shall be entitled *under the laws of any State* to any compensation, pension or other benefit greater than that herein provided, the amount paid to the employee shall be that prescribed by statute. The Committee are authorized to pay the amount of such liability in the manner prescribed by law instead of in accordance with the provisions contained herein. In case the statutory liability is less than the Company's liability hereunder, the Committee may make the payments required by law and shall pay to such employee or to those persons entitled to take hereunder the excess of the amount payable hereunder above the amount so paid in accordance with law. In case any statutory payment has to be made or any judgment is recovered by an employee or his beneficiaries against the Company on account of the legal liability above

described or any liability for damages on account of accident or death, or on account of any liability hereunder, the amount of the statutory payment or judgment shall be chargeable to the Fund." (Emphasis supplied.)

Section 13 provided:

"Change in Regulations.

"The Committee * * * may from time to time make such changes in these Regulations as in their judgment will more effectually carry out the purpose expressed therein, but such changes shall not without his consent affect the rights of any employee to any benefit, insurance or pension to which he may have previously become entitled hereunder."

In 1914, Section 9(32) was renumbered 9(29), and amended to provide, inter alia, that

"In case any benefit or pension shall be payable under the laws now in force or hereafter enacted of any *State or Country* to any employee of the Company or his beneficiaries under such laws, the excess only, if any, of the amount prescribed in these Regulations above the amount of such benefit or pension prescribed by law shall be the benefit or pension payable under these Regulations."[3] (Emphasis supplied.)

It is not disputed that all active and retired employees received prompt notice of this and all other amendments to the plan from the company. However, the company does not contend that the consent of the employees was obtained by the company with respect to any of the relevant amendments.

In 1927, the company entered into an agreement with the defendant Bankers Trust Company, whereby a trust fund was created for the payment of pensions pursuant to the plan. Bankers Trust Company was constituted as trustee of this fund.

---

**3.** This provision is presently numbered Section 8(27).

In 1935, Congress passed the Federal Social Security Act, 42 U.S.C.A. § 301 et seq. which provided for the payment of Social Security insurance benefits to persons qualifying under the Act's provisions. Taxes were to be imposed in equal amounts upon employees and employers to provide the funds for the payment of these benefits. The payments under the Act were to begin in 1942. On November 9, 1936, the company's President wrote to all its employees explaining the effect which the Social Security Act, if implemented, would have on the company's pension plan payments. The President announced that

"No change is contemplated in the Plan on account of the Federal Social Security Act of 1935 except that if the Act shall remain in effect unchanged until 1942, when payment of Government Pensions begins under the Act, it is expected that the provisions now in the Plan that all of the pension paid by the Government shall be deducted from the pension otherwise payable under the Plan will be changed to provide that only one-half the pension paid by the Government under the Act shall be deducted. In other words, if the Act remains unchanged, the employee retiring on pension after 1941 will receive from the Government and the Company together the equivalent of his or her full pension from the Company plus one-half of the Government pension, which half represents, in effect, what the employee has contributed toward the Government Pension through the tax on his or her salary or wages." (Defendants' Exhibit AA.)

At approximately the same time, a memorandum describing the proposed changes in more detail was distributed to supervisory personnel of the company, for the purpose of supplying information to employees making inquiries with respect to these changes.

In 1939, the Social Security Act was amended to advance the date to benefit payments to 1940; the company immedi-ately amended its plan as indicated in the 1936 letter. This amendment, dated January 1, 1940, contained a new paragraph, Section 8(28) which provided:

"From the time when a person retired on a service pension under this Plan is entitled to a 'primary insurance benefit' under the 'Social Security Act Amendments of 1939' the amount of his monthly service pension otherwise payable under this Plan shall be reduced by one-half of said 'primary insurance benefit' subject to the following conditions * * *

" * * * This Paragraph * * shall be effective only while the Act entitled 'Social Security Act Amendments of 1939' shall remain in effect unchanged." (Plaintiffs' Exhibit 3.)

All active and retired employees were informed of this amendment by a letter from the company's president on December 11, 1939, and a copy of the amended plan was sent to each employee. In addition, a questionnaire explaining the changes in the plan was distributed to supervisory personnel of the company.

In 1949, the company amended this new paragraph of the plan to anticipate expected amendments in the Social Security Act. This change was designed for greater flexibility, and provided, in relevant part, that

"A benefit or pension payment under this Plan shall be reduced by one-half the amount of any related benefit which the recipient would be entitled to receive under the Federal Social Security Act, *as in effect at the time the payment is made * *.*" (Emphasis supplied.)

This change was thought necessary because the 1940 amendment to the plan, providing for the deduction of one-half of the Social Security payments, was explicitly made effective only so long as the Social Security Act as amended in 1939 remained unchanged. (Record, pp. 74–75.) Thus, by virtue of the 1949 change, when the Social Security Act was amend-

ed in 1950 to provide for greater benefits, the one-half offset provision became applicable to these increased benefits.

A final change in the plan claimed to be relevant to this litigation took place in 1953, after the Social Security Act was again amended to provide for greater benefits. By virtue of this change, while employees retiring after 1952 were to continue to have their pensions adjusted on the basis of the Social Security Act in effect on their date of retirement, those employees who had retired before August 31, 1952, were to have their pensions adjusted on the basis of the Act in effect between 1950 and 1952, before the 1952 amendments to the Act. Thus, those employees retiring before August 31, 1952 were not made subject to greater offsets as Social Security benefits increased.

### III. Discussion

■ The plaintiffs, in essence, contend that neither Section 9(32) of the 1913 plan nor its successor, Section 9 (29) of the 1914 plan contained authority for the 1940 amendment which provided for the one-half offset of Social Security benefits from the plan's pension payments. However, I find this argument to be without merit. Identical contentions with respect to the 1914 plan were dealt with at great length and rejected by Judge Hoffman in Hurd v. Illinois Bell Telephone Co., D.C.N.D.Ill.1955, 136 F. Supp. 125, affirmed 7 Cir., 234 F.2d 942, certiorari denied, Seybold v. Western Elec. Co., 1956, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124, rehearing denied, 1957, 352 U.S. 977, 77 S.Ct. 352, 1 L.Ed. 2d 329. I find Judge Hoffman's reasoning to be persuasive in every respect. Section 9(29) of the 1914 plan authorizes the deduction of " * * * any benefit or pension * * * payable under the laws * * * of any State or Country * * *." Plaintiffs argue here, as in Hurd, that "benefit" or "pension" as used in the plan, were not intended to encompass old-age insurance payments such as those made under the Social Security Act. They seek to distinguish "insurance" payments from "pensions"

by limiting the latter to non-contributory payments such as those made to war veterans. In rejecting this argument, Judge Hoffman stated:

"The plaintiffs attempt to ascribe to the terms used * * * a precise and technical meaning which was never intended and which the words have acquired, if at all, only in recent years and in other contexts. What they ignore is that [the Section], in its present form, was drafted in 1914 at a time when the scope and variety of present-day old-age and disability plans were unknown, and, indeed, industrial pensions themselves were a rarity. * * * There is evidence to show that the provision was 'purposely made very broad in order to cover the many possible forms of social insurance, which it is impossible to foresee in detail, but which if enacted would, in the absence of a provision of this sort, result in duplicate payments to employees or their beneficiaries, to which the Company would be forced to contribute either directly * * * or indirectly * * *.' In 1918 the Secretary of the Employees Benefit Fund Committee * * * wrote that, 'The wording is broad enough to cover health insurance laws, old age pensions, and similar laws if any such laws are ever enacted in this country.' * * * [I]t would be difficult to conceive of a governmental payment which more accurately fulfills the stated purpose of [this Section]. The court would not be justified in nullifying this provision because the defendants were unable to describe in detail the social legislation of 20 years hence which—with rather surprising foresight—they anticipated and provided for." 136 F.Supp. at pages 137–138.

See also Defendants' Exhibits B and C. It seeems clear that the operation and coverage of the plan were not to be dependent upon such verbal niceties as suggested by the plaintiffs. The section

was intended to encompass "all public payments of old age benefits, by whatever name they may be called." Hurd v. Illinois Bell Telephone Co., 7 Cir., 234 F.2d 942, 946, certiorari denied, Seybold v. Western Elec. Co., 1956, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124, rehearing denied, 1957, 352 U.S. 977, 77 S.Ct. 352, 1 L.Ed.2d 329. I, therefore, conclude that the 1914 provisions were intended to allow for the deduction of benefits in the nature of those subsequently instituted under the Social Security Act.

The plaintiffs also contend that Section 9(29) authorized deduction only of payments made directly to the employees by the company. Since Social Security payments are, in form, made by the government rather than the company the plaintiffs urge that the deduction of these payments was never contemplated. But this is a semantic distinction which has no meaningful significance and which does not comport with the obvious intent of the parties. The amounts deducted by the company constitute solely the portion of the Social Security payments attributable to the statutory taxes imposed upon the company by the Act. In light of the intentionally broad scope of Section 9(29), it is most unlikely that a distinction between payments made directly by the company to its employees and payments made by the company indirectly, through the machinery of the Social Security program, was intended. In either case, the deducted amounts result from company contributions; in either case, the refusal to allow the deduction would result in the duplicate payments which the provision was obviously intended to avoid. See McLemore v. Western Union Telegraph Co., 1918, 88 Or. 228, 171 P. 390, modified on other grounds, 1918, 171 P. 1049; Hurd v. Illinois Bell Telephone Co., supra. Thus, this contention of the plaintiffs must also be rejected.

The plaintiffs present the additional contention, not discussed fully in the Hurd case, that since all but one of the plaintiffs were employed by the company when the plan was first instituted in 1913, their rights must be determined and fixed by the provisions of the 1913 plan; and further that since Section 9(32) of the 1913 plan provided for the offset of benefits payable "under the laws of any State" no deduction of federal benefits was contemplated. But, the language employed in this section must be read in the context of the obvious intention of the parties. The provision was clearly designed to avoid the duplication of payments; it was intended to protect the company against the necessity of making two payments—one pursuant to its pension plan and the other under statutory compulsion—for the same essential purpose. Viewed in this light, a distinction between payments required by state law and those required by federal law would not only be illogical, but would substantially defeat the obvious purpose of the contested provision.

The interpretation urged by the company is not only in accord with the clear intent of the parties, but it is also compelled by basic principles governing the construction of contracts. Thus, the Restatement of Contracts § 236(b) (1932) provides:

"The principal apparent purpose of the parties is given great weight in determining the meaning to be given to manifestations of intention or to any part thereof."

Section 235(e) states:

"If the conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation."

Williston further points out that

"The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts but the declarations of the parties may be considered." 3 Williston, Contracts, pp. 1792–93 (Rev.Ed.1936).

And Corbin states that

"a party should be permitted to determine the operative meaning of the words of agreement by proving that both parties so understood them, or that he so understood them and the other party knew that he did, or that he so understood them and the other party had reason to know that he did." 3 Corbin, Contracts, pp. 59–61 (1960).

See also Town of Pelham v. City of Mount Vernon, 1952, 304 N.Y. 15, 23–24, 105 N.E.2d 604.

In the instant case, it is apparent that the parties did not consider this section to be limited to state benefits. The record indicates that they consistently acted as if the offset of federal payments was also authorized.

The plan was amended in 1914 in several respects; it was at this time that Section 9(32) was renumbered and revised to provide for the deduction of benefits payable under the laws of "any State or Country". The Secretary of the Employees' Benefit Fund Committee, which was directly charged with the determination of questions involving the administration of the plan, then wrote to all the company's employees explaining the changes in the plan. (Defendants' Exhibit A.) He listed seven amendments which effected substantive changes in the plan without mentioning the revision of Section 9(32), and indicated that the remaining changes were merely revisions in phraseology "with a view to greater clearness". This interpretation was not questioned by any employee.

On August 22, 1918, the Secretary, in response to a query from the Benefit Committee of the Bell Telephone Company of Canada wrote:

"The wording is broad enough to cover health insurance laws, old age pensions, and similar laws if any such laws are ever enacted in this country." (Defendants' Exhibit B.)

This view was consistently reiterated in response to similar queries in subsequent years. On February 7, 1920, the Secretary wrote:

" * * * the wording * * * was purposely made very broad in order to cover the many possible forms of social insurance, which it is impossible to foresee in detail, but which if enacted would, in the absence of a provision of this sort, result in duplicate payments to employees or their beneficiaries * *." (Defendants' Exhibit C.)

This was repeated by the Secretary in a memorandum dated June 25, 1923. (Defendants' Exhibit D.) On November 26, 1930, the Secretary wrote:

"We feel that the intent of this paragraph is to require an offset to a benefit provided by the Plan where the law of the state or country provides a benefit of a class similar to that provided by the Plan * * *." (Defendants' Exhibit E.)

The record clearly discloses that the company was most scrupulous throughout in informing its employees promptly of all changes in the plan, and in providing complete explanations of these changes. (See, e. g. Record, pp. 50–51.) Thus, after the passage of the Social Security Act in 1935, the company informed all its employees by letter that when payments under the Act became effective, an amount equal to one-half of these federal benefits would be deducted from payments under the company's plan. (Defendants' Exhibit AA.) In addition, when the amendments to the plan were promulgated in 1939, all employees were immediately notified. They similarly received explanations of the 1949 and 1952 amendments. (See Defendants' Exhibits I-Z.)

The employees, thus, were certainly aware, at least since 1936, of the company's position that these deductions were authorized. It is, therefore, highly significant that no employee ever questioned this position until the commencement of the instant action in 1957. Moreover, it is conceded that all employees, including the present plaintiffs, regularly accepted the deductions in their pension payment checks without complaint or objection. (Defendants' Exhib-

it AA, paragraph 15.) For example, in 1948 plaintiff Beald wrote to the company's personnel supervisors seeking clarification of his payments under the pension plan. He wrote: "I am entirely familiar with the reason for this deduction only question the month when this should commence * * *." (Defendants' Exhibit H.)

In sum, the manifest intention of the company, and the long-standing acquiescence by the employees in the questioned deductions, indicate conclusively that the offset of Federal, as well as State, retirement benefits was contemplated. Thus, the contractual rights of the plaintiffs were not infringed when these deductions were made. See Hurd v. Illinois Bell Telephone Co., supra, 136 F. Supp. at pages 140–141, 155–156.[4]

A final contention raised by the plaintiffs deals with the 1949 amendment to the plan. By that time, three of the plaintiffs had already retired, and were receiving pension payments under the plan. The 1949 amendment, which operated to increase the offset deductions to correspond with any increase in Social Security benefits, resulted in increased deductions for retired as well as for active employees. These plaintiffs urge that they had vested rights to the full amount of the pension payments as provided for by the plan at their retirement date. Thus, they contend that the increased deductions subsequent to retirement were an infringement of these rights.

But, even if their rights became vested at retirement, these rights existed only as defined by the plan which created them, and thus remained subject to adjustment in accordance with its provisions. As Judge Hoffman indicated in the Hurd case,

"In their insistence upon the concept of vested rights, the plaintiffs have overlooked the nature of the right which became vested in the plaintiffs when they fulfilled all the requirements for a pension and were retired. It was not an irrevocable right to a specific sum of money, but a right to receive a pension determined in accordance with the provisions of the Plan." 136 F. Supp. at page 144.

When the plaintiffs in question retired, the plan authorized the offset of "any benefit or pension * * * payable under the laws now in force *or hereafter enacted* of any State or Country to any employee of the Company." (Emphasis supplied.) *The purpose of this provision —the avoidance of duplicate payments— indicates conclusively that it was to be applicable to retired as well as active employees.* Indeed, any distinction between them would produce an inequity that could scarcely have been contemplated.[5] Moreover, acquiescence is an important factor in this connection as well; the retired employees accepted the additional deductions resulting from the 1949 amendment without complaint or objection. I, therefore, conclude that these deductions were authorized by the plan.

## IV. Conclusion

The plaintiffs have failed to establish that any of the amendments to the company's pension plan, or any deductions from payments under that plan constituted an infringement of their contractual rights. Judgment will, therefore, enter for the defendants. The foregoing opinion shall constitute the

---

4. It is thus unnecessary to consider either the question of whether the plan conferred any vested rights upon the plaintiffs at the time of its implementation, or the question of the applicability of the Statute of Limitations.

5. For example, if the plaintiffs' argument were accepted, an employee retiring immediately prior to legislation substantially increasing social security benefits would in time receive both the additional federal payments, and a pension under the company's plan which did not reflect the deduction of these additional benefits. On the other hand, an employee retiring immediately subsequent to such legislation would receive a considerably smaller pension from the company.

**60**

Court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S. C.A.