**Billy MATTHEWS, Plaintiff-Appellee,**

v.

**SWIFT AND COMPANY and Globe Life Insurance Company, Defendants-Appellants.**

**No. 71–2623.**

United States Court of Appeals, Fifth Circuit.

Aug. 31, 1972.

Rehearing Denied Oct. 18, 1972.

---

Tabor R. Novak, Jr., Fred S. Ball, Jr., Ball, Ball & Matthews, Montgomery, Ala., for defendants-appellants.

James W. Cameron, Cameron & Cameron, Montgomery, Ala., for plaintiff-appellee.

Before RIVES, BELL and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

Matthews sued Swift and its wholly owned subsidiary, Globe, claiming that Swift had wrongfully terminated his employment instead of granting him a disability retirement, and that as a result he had suffered interrelated items of damage, consisting of: (1) loss of the disability pension to which he was

entitled under Swift's Pension Plan; (2) reduction of his coverage under a group life insurance policy issued by Globe and covering Swift's employees;[1] (3) cancellation of a medical certificate of group insurance issued by Globe on which premiums were paid by Swift;[2] and (4) Globe's refusal to honor the provisions of two life insurance policies issued to Matthews, each in the face amount of $7500.00, and each containing provisions for waiver of premiums in the event Matthews became totally disabled.

The complaint prayed that the court required Swift either to place Matthews on disability pension or to grant him damages in the amount of $50,000.00 for terminating his employment without the benefits of such pension. The complaint further prayed that the court require Globe to reinstate his group life insurance to the full amount of $15,000.00; to reinstate his major medical group insurance; and still further to grant him waiver of premium benefits as called for in the two $7500.00 life policies, or in the alternative to enter a judgment against Globe for $15,000.00 for its breach of contract by its failure to honor the provisions for waiver of premium benefits.

Federal jurisdiction was based on diversity of citizenship which requires that "the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs." 28 U.S.C. § 1332. Swift and Globe each moved to dismiss because the jurisdictional amount was not involved, claiming that the pension and insurance benefits claimed by Matthews did not exceed the sum or value of $10,000.00 and that the alternative claims for money damages did not suffice to invoke federal jurisdiction. The district court denied the motions to dismiss. On appeal, neither Swift nor Globe insists on its claim of lack of federal jurisdiction. We agree with the result of the district court's decision denying dismissal for lack of federal jurisdiction.

I. The Pension Plan

Its motion to dismiss having been denied, Swift next moved for summary judgment claiming that its Pension Plan is merely a gratuity, that it confers no contractual rights, that the Pension Board alone has the discretion to grant a pension for disability and that any decision of the Pension Board is final and conclusive. Swift's motion for summary judgment was supported by an affidavit of K. W. Schuberth, Secretary of Swift's five-member Pension Board, to which was attached a copy of Swift's current Pension Plan dated January 1, 1966, as amended to August 22, 1968 (App. 19–37).[3] The Plan is financed entirely by Swift and its subsidiary corporations. Article X of the Plan provides in part that:

"NO CONTRACTUAL RIGHTS CONFERRED

"The establishment of this Pension Plan, the Pension Trust, or the Trust Fund, the granting of a pension, or any other action at any time taken by the Board of Directors of Swift & Company, the Pension Board or by the Trustee, or by their authority, shall

---

1. The complaint alleged:
   "As a result of the defendant Swift terminating plaintiff's employment rather than medically retiring him as it should have done, defendant, Globe, has reduced said group policy from the face amount of $15,000.00 to $812.31 of paid up life insurance." (App. 3.)

2. The complaint alleged:
   "As a result of the defendant Swift terminating plaintiff's employment rather than medically retiring him as it should have done, defendant Globe has cancelled and terminated said major medical group insurance policy." (App. 3.)

3. Earlier pension plans had been established as far back as August 1, 1916 (App. 35). Matthews had worked as a salaried employee of Swift from July 23, 1946 to March 9, 1970, the date on which he allegedly became totally and permanently disabled. The provisions of earlier plans were not shown.

not constitute any contract with or confer any legal or equitable right upon any employee, pensioner or other person whomsoever, as against the Company or any of its subsidiary (covered or noncovered) or affiliated corporations * * *."

(App. 34.)

A pension trust fund is provided of which Bankers Trust Company is Trustee. Administration of the Pension Plan is vested in a Pension Board consisting of five members appointed annually by Swift's Board of Directors, which Board also has power to remove any member of the Pension Board and to fill any vacancy.

Article III, paragraphs 5 and 6 provide in part:

"5. The Pension Board shall have the sole power, duty and responsibility to direct the administration of the Pension Plan in accordance with the provisions herein set forth, and shall act as the majority of its members shall decide.

"6. All decisions of the Pension Board as to the facts of any case and the meaning and intent of any provision in this Plan or of its application to any case shall be final and conclusive * * *"

(App. 23.)

The Pension Plan contains provisions establishing requirements for employees to be eligible for pensions, for the granting of pensions to widows and dependent children of employees, and for computing the amount of pensions.

Swift's Board of Directors retains power to amend and to terminate the Plan. Among other provisions we mention two particularly pertinent to the present case. Article VIII provides:

### PERMANENT DISABILITY

"Any employe under normal retirement age who shall become disabled, other than temporarily, so as to be unable to perform the duties of any job available for him at the unit where employed, as determined in the sole discretion of the Pension Board, shall, if such employe has completed ten (10) years or more of credited service prior to such disability, be entitled to a disability retirement pension to commence upon retirement."

(App. 34.)

Article XVI, paragraph 1 provides:

"1. The validity and construction of this Pension Plan shall be determined according to the laws of the State of New York, and all the provisions hereof shall be administered according to the laws of said State."

(App. 37.)

Mr. Schuberth's affidavit in support of Swift's motion for summary judgment concluded:

"The question of whether an employee is disabled is a matter within the sole discretion of the Pension Board.

"Said Board has not determined that the plaintiff is disabled so as to be unable to perform the duties of any job available for him at the unit where employed." [4]

(App. 16.)

In its order denying Swift's motion for summary judgment, the district court commented:

"Finally, defendant Swift & Company argues that its pension plan is merely a gratuity and that the Pension Board's decision with regard to disability is conclusive. While defendant's pension plan may not expressly confer any contractual rights, this Court is clear to the conclusion that an employee's rights under a non-contributory retirement plan are contractual. Furthermore, the Pension Board's finding cannot be sustained if it is arbitrary, if it is a product of

---

4. No proof was ever offered by any party as to whether the Pension Board actually considered and denied Matthews' claim for pension, nor as to the evidence before the Board.

bad faith, or if it is based on insufficient evidence."

(App. 45.)

In our opinion the district court properly denied Swift's motion for summary judgment. There has been noted

"an increasing trend to hold that private noncontributory pension and retirement plans create a contractual obligation in which the promise to pay benefits is made in consideration of the continued faithful service of the employee for the requisite period. These courts take the view that a retirement pension is pay withheld to induce continued faithful service, amounting to delayed compensation for services rendered. The rationale of some such holdings is that the pension plan is the offer of a unilateral contract which is accepted by full performance by the employee, whereupon his previously inchoate rights vest and become legally enforceable. The right which thus vests is the right to receive payments in an amount computed in accord with the conditions and provisions of the whole contract.
* * * "

60 Am.Jur.2d, Pensions and Retirement Funds § 74, pp. 950–951.[5]

■■■ As has been noted, Swift's Pension Plan provides that the laws of New York should control in determining the validity and construction of the Pension Plan and also in its administration. Alabama, along with most other states, recognizes the right of parties to choose the law of another state to govern their contractual rights and duties.[6] Such a provision in a contract will not, however, be given effect if its consequences are likely to be contrary to the law or public policy of the forum.[7] In the absence of a showing of such conflict between the laws of New York and the law or public policy of Alabama, the laws of New York control as provided in Article XVI, paragraph 1 of the Swift Pension Plan.

A similar pension plan was involved in Gitelson v. DuPont, 1966, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336. There the plan provided for no employee contributions and the fund was administered by a three-man board on which three DuPont partners sat. The Court of Appeals of New York held that "* * * an employee's right to receive payment under the plan is a conditional contract right and when the plaintiff became a party to the contract by taking employment under it he was bound by these conditions." 268 N.Y.S. 2d at 13, 215 N.E.2d at 338. There the Board was vested with the sole authority to determine all matters relating to an employee's right to receive retirement payments. The New York Court of Appeals held the decision of the Board to be "final and conclusive" unless the claimant met the burden to show that the Board's ruling was motivated by bad faith or arrived at by fraud or arbitrary action. In short, as expressed by the New York Court of Appeals, "The rights of the plaintiff under the plan are contract rights and are limited to the provisions of the contract." 268 N.Y.S.2d at 13, 215 N.E.2d at 336, 337.

Article III, paragraphs 5 and 6 of the Pension Plan, heretofore quoted in pertinent part, vest in the Board "the sole power, duty and responsibility to direct the administration of the Pension Plan." They require that the Board "shall act as the majority of its members shall decide." It is "decisions of the Pension Board" which "shall become final and conclusive." Swift failed on its motion

---

5. See also Annotation 42 A.L.R.2d 464, 467, § 4; 1A Corbin on Contracts, § 153. A like rationale has been recognized in Alabama where Matthews was employed and performed about 24 years of service for Swift. Henderson Land & Lumber Co. v. Barber, 1920, 17 Ala. App. 337, 85 So. 35, 36.

6. New York Life Ins. Co. v. Scheuer, 1916, 198 Ala. 47, 73 So. 409; J. R. Watkins Co. v. Hill, 1926, 214 Ala. 507, 108 So. 244, 245.

7. 6A Corbin on Contracts, § 1446, p. 487; A.L.I. Restatement, Conflict of Laws 2nd §§ 187, 188.

for summary judgment to make any showing of any decision by the Pension Board. The affidavit of Mr. Schuberth, the Board's secretary, concluded simply with the negative averment that, "Said Board has not determined that the plaintiff is disabled so as to be unable to perform the duties of any job available for him at the unit where employed." (App. 16.)

The case proceeded to trial on the merits before the court without a jury. Matthews and Swift disagreed as to the issues. Matthews' complaint alleged:

"6. The issue against both defendants is the same and that is, whether the plaintiff is permanently and totally disabled as a result of a myocardial infarction suffered by him on March 9, 1970."

(App. 4.) Swift's answer claimed that the issue as to Swift was framed by Article VIII of the Pension Plan (which we have quoted) and, moreover, "that said Pension Board has not determined that the plaintiff has become so disabled as to be entitled to a pension." [8] (App. 47.)

From the filing of Swift's answer and throughout the evidentiary hearing we find no reference to any decision of the Pension Board. Without further objection, the trial apparently proceeded on what the plaintiff, Matthews, claimed to be the issue against both Swift and Globe, viz.: "whether the plaintiff is permanently and totally disabled as a result of a myocardial infarction suffered by him on March 9, 1970." At the conclusion of the evidence the district court called for briefs, stating that, "The only question left in it is whether this man was permanently and totally disabled within the meaning of these policies." (App. 181.)

After considering the parties' briefs, the district court made findings of fact concluding as follows:

"Based primarily upon the testimony of Dr. Cawthon and also upon the conclusions of Dr. Friedman and the unexplained severance of plaintiff's employment, this Court concludes that the plaintiff is and was at all times relevant to the case, permanently and totally disabled. The evidence affirmatively reflects that the plaintiff since his coronary thrombosis has been unable to perform the occupation that he was performing for Swift. He is further unable to perform any other task for which he is qualified or fitted, considering his age, education, training, and experience.

"Accordingly, it is the JUDGMENT of the Court that the plaintiff is entitled to the following relief:

"(1) the benefits of Swift's pension plan from and after March 9, 1970, the date of disability,

"(2) reinstatement of both the plaintiff's group life insurance at the face amount of $15,000 and his major medical group insurance, and

"(3) waiver of premiums under life insurance policies with defendant Globe."

(App. 232, 233.)

■ The plaintiff, Matthews, is clearly mistaken in his claim that there is but one simple issue against both Swift and Globe, namely, whether he is permanently and totally disabled as a result of his heart attack of March 9, 1970. As to Swift, Article VIII of the Pension Plan does not require that Matthews be permanently and totally disabled but simply that he "become disabled, other than temporarily, so as to be unable to perform the duties of any job available for him at the unit where employed." On the other hand, the question whether Matthews is so disabled is to be "determined in the sole discretion of the Pension Board." Construed in connection with Article III, paragraphs 5 and 6, the Pension Board's determination must be by a *decision* of the Board acting "as the majority of its members

---

8. Again we note that there is no affirmative disclosure of any decision of the Pension Board, nor as to the evidence upon which any such decision was based.

shall decide." If there has been any such decision against the plaintiff, then it can be overturned only by the plaintiff's proof of bad faith, fraud or arbitrary action, as has heretofore been developed. See *Gitelson, supra*. Clearly Matthews has not made such showing. But, where it is unclear whether the Pension Board has considered and decided an employee's claim on the merits, should a court undertake to make such a determination? On the facts of this case we hold that it was error for the district court to have decided that Matthews was entitled to a disability pension.

Matthews testified that he requested Swift to put him on disability retirement and supported that request with a certificate and letter from his physician, Dr. William Cawthon (App. 91). These were mailed about August 18, 1970, to Mr. R. S. Kincheloe, Director of Personnel for Swift (Plaintiff's Exhibits 9 and 10). A Mr. R. H. Bell, "Manager Benefits" for Swift, secured a further examination of Matthews by Dr. Ben Friedman, whose findings were mailed to Mr. Bell on March 15, 1971 (Defendants' Exhibit 1). Meanwhile Swift had, either on September 28, 1970 (Plaintiff's Exhibit 1) or on January 6, 1971 (App. 76), terminated Matthews' services by letter from Mr. Kincheloe, apparently without explanation. The only communication from the Pension Board to Matthews is a letter dated and postmarked January 6, 1971, from "K. W. Schuberth, Secretary Pension Board" which states that, "This letter is intended only as a source of general information." (Plaintiff's Exhibit 1.) That letter states that Matthews' services for Swift terminated on September 28, 1970, after 24²⁄₁₂ years of credited service from 7/23/46 to 9/28/70, informs plaintiff of the provisions of the Swift Pension Plan for the payment of a deferred pension because of age, and calculates that "such single pension which you may be entitled to receive will amount to $145.00 per month." That letter makes no reference to plaintiff's claim for a disability pension, nor to whether any such claim has ever been considered or decided by the Pension Board.

The only provision for a disability pension is Article VIII of the Pension Plan which has been quoted *ante*. That provision must be construed in connection with Article III, paragraphs 5 and 6, the pertinent provisions of which have also been quoted *ante*. The discretion to be exercised by the Pension Board in an Article VIII case is, however, unique in that it involves not only a decision as to the facts of the particular case but also a resolution of the meaning, intent and application of the provisions of Article VIII. Most of the provisions of that article are reasonably definite, and those provisions were met by Matthews. He was 47 years of age, "under normal retirement age." [9] Matthews' heart attack undoubtedly caused him some disability. Prior to such disability, Matthews had completed more than ten (10) years of credited service. These definite standards could be applied by any fit trial body, judge or jury, perhaps as well as by the Pension Board. That is true also of the provision as to the degree of disability, viz., "so as to be unable to perform the duties of any job available for him at the unit where employed." When, however, we reach the requirement that the employee "become disabled, other than temporarily," the standard is so indefinite that a judge or jury's decision could hardly be substituted for that of the Pension Board without doing violence to the provision that all decisions as to the availability of a disability pension lie "in the sole discretion of the Pension Board." What is meant by "other than temporarily"? Those words can have an infinite number of meanings. The only conceivable case in which both a judge and the Pension Board would necessarily conclude that

9. Article II, paragraph 19 provides: "The 'normal retirement age' shall mean sixty-five (65) years of age."

an employee is disabled "other than temporarily" is that in which disability is clearly "permanent." In all other cases the discretion of the judge cannot be substituted for that of the Pension Board without departing from the terms of the contractual obligation.[10]

It does not appear whether the Pension Board has affirmatively decided by a majority of its members that Matthews is not entitled to the disability pension which he claims, or has only negatively failed to decide that he is so entitled. In either event, before the Judge's discretion can be substituted for that of the Pension Board under the Plan, Matthews has the burden of proving such a clear case of permanent disability that no honest tribunal could reach any other decision and the burden of proving that any other decision is or would be arbitrary, fraudulent or in bad faith.

Clearly Matthews did not undertake such a heavy burden. Nor is such a burden met by the evidence in this case. Matthews' own physician, Dr. Cawthon, testified that he was totally disabled for his regular occupation but not for any occupation, that he would never be able to resume his regular work, and that he was not a suitable candidate for a rehabilitation program. (Plaintiff's Exhibit 9.) In answer to the Judge's question as to the "extent of the infarction," Dr. Cawthon said: "It was very mild—as such things go, it would be classified as mild damage." (App. 193.) His heart was not enlarged. (App. 194.) "From the physical standpoint" Dr. Cawthon expressed the opinion that he could do some work. (App. 210.)

"A. * * * This man is disabled for psychological reasons primarily; and, in my opinion, I think his heart is in good

enough shape that he could work if he had confidence and no fear. He is immobilized by anxiety and depression to me.

"Q. Is this unreal or malingering in any way?

"A. I don't think he is malingering."

(App. 211.) Dr. Friedman testified also "that there is an important element of anxiety and mental depression" (App. 145); that it is quite common for a person who has suffered a heart attack similar to that of Mr. Matthews to have anxiety and mental depression.

"But most patients will get over it in the first two or three months and then resume a normal, active life and learn to live with their handicaps; but during the active acute stage, yes, it is quite common for depression, feeling of dependency to set in * * * *"

(App. 146.)

Under the provisions of Swift's Pension Plan, before the district court could adjudge that the plaintiff, Matthews, was entitled to disability benefits under the Plan, it must find either that a decision actually reached by the Pension Board was arbitrary, fraudulent or in bad faith, or, if the Pension Board had made no decision, that it could not fairly and in good faith decide against Matthews upon the evidence presented before the court. The court made no such finding.[11]

We must therefore reverse and remand for further consideration to paragraph 1 of the relief granted by the court's judgment, *ante*.

II. The Insurance Policies

Paragraphs 2 and 3 of the judgment *ante* must be vacated and the suit

---

10. That may not be so if the standard had been previously construed or made more definite in other grants or denials of disability pension, but the evidence in this case contains no such showing.

11. On remand, the district court may see fit to require the Pension Board actually to decide whether Matthews is entitled to a disability pension.

against Globe remanded for further consideration.

The agreement that the laws of New York should control is contained in Article XVI of the Pension Plan and relates solely to that Plan. There does not appear to be any like agreement as to Globe's insurance policies. In the absence of some such agreement, the law of Alabama controls as to Globe's liability because the policies were delivered and were to be performed in Alabama.

Articles III and VIII of Swift's Pension Plan do not appear to affect Globe's liability under its policies except insofar as the Pension Plan and the policies are interrelated by some provision in one or more of the insurance contracts. Otherwise the issues to be tried and decided by the court as between Matthews and Globe are like those in the usual case brought by an insured against his insurer, and are freed from the unusually heavy burden which Matthews must sustain before the court can decide that he is entitled to a disability pension from Swift.

Finally, the provisions of the several policies differ as to the definitions of total disability, of permanent disability, of the presumption of permanent disability from disability for particular periods of time, of the duration of the benefits on account of disability, and on various other matters. Each policy of insurance is a separate contract and Globe's liability should be tried and decided in accordance with the terms of its several contracts. The issues not having been so framed or decided, it is not appropriate at this time for us to enter upon any detailed review and construction of any of Globe's policies of insurance.

In view of Rule 39(a), F.R.A.P., it is ordered that the cost of appeal be taxed one-half against defendants-appellants and one-half against plaintiff-appellee.

Reversed in part, vacated in part and remanded.