Otto SMITH, Plaintiff,

v.

The ETHYL CORPORATION, Defendant.

Civ. A. No. 74–H–878.

United States District Court,
S. D. Texas,
Houston Division.

June 21, 1976.

William W. Kilgarlin, Houston, Tex., for plaintiff.

L. Chapman Smith, Baker & Botts, Houston, Tex., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

## I. FINDINGS OF FACT

### A. *Plaintiff's Injury*

1. Plaintiff injured his back on or about March 21, 1970. An employee of defendant with eighteen years seniority, plaintiff had previously injured his back in a work-related incident in 1965, and he was familiar with the procedures to be followed in reporting an injury and in applying for compensation claims.

2. Plaintiff was examined on or about March 21, 1970, by the company physician, Dr. Burdick, and after receiving heat treatment he was sent home. He returned to work the next day, but was only able to work part of the day and was sent home after receiving a slip from the company nurse. Defendant's Exhibits 12 & 13.

3. Thereafter, plaintiff returned to work on May 11, 1970, but was unable to work a full day. He left before the end of his shift that day and did not return to work thereafter.

### B. *Disability Benefits Paid*

#### 1. *Workmen's Compensation*

4. In August, 1970, plaintiff decided to file for total and permanent disability bene-

fits with the company pursuant to its Accident and Sickness Benefit Plan ("Plan"). On August 14, 1970, plaintiff filed with the Industrial Accident Board ("IAB") of Texas a claim for workmen's compensation. Plaintiff's Exhibit 3. His claim was allowed by the IAB and was thereafter challenged on appeal to the district court by defendant's insurer.

5. This appeal was ultimately compromised and settled by plaintiff and the insurer and on September 21, 1971, a judgment was entered which recited that plaintiff would recover $14,719.09 from the insurer in a lump sum payment. Of this sum, $719.09 was designated as medical expenses and $3,679.77 was adjudged to plaintiff in trust as a reasonable attorney's fee for his attorney of record. Plaintiff's Exhibit 4.

6. The evidence demonstrates that plaintiff did not receive as income those portions of the award designated as attorney's fees or medical expenses.

### 2. Social Security

7. On September 24, 1971, the Social Security Administration entered an award of disability benefits for plaintiff retroactive to October, 1970. Plaintiff's Exhibit 9. The statement designating award stated that because evidence presented to the Examiner indicated that plaintiff's condition might improve in the future, his allowance of benefits would be subject to periodic review. Id. at 2.

8. Further, the Secretary authorized an amount to be withheld from the total benefit funds available for attorney's fees, Id. at 3, and the total amount of Social Security benefits payable to plaintiff's wife was reduced because plaintiff had received workmen's compensation. Id. at 1.

### C. Nature of Plaintiff's Injury

9. Plaintiff has failed to demonstrate by a preponderance of the credible evidence that the injury which occurred to his back on or about March 21, 1970, was work-related, i. e., occupational. Plaintiff has further failed to demonstrate by a preponderance of the credible evidence: that defendant or any of its employees represented to plaintiff, directly or to anyone then representing him; that he would be paid at a rate of 66⅔ percent of his base pay during the second 26 weeks of his disability, Defendant's Exhibit 10, Plaintiff's Exhibit 6; or that plaintiff relied, or was entitled to rely, upon any such representation in settling his workmen's compensation claim.

### D. Defendant's Disability Plan

#### 1. Structure

10. Pursuant to a collective bargaining agreement ("Contract") between defendant and plaintiff's union, the International Union of District 50, Allied and Technical Workers, Local No. 16000, defendant maintains in full force and effect during the term of the Contract the Plan for plaintiff and all others in the bargaining unit. Plaintiff's Exhibit 1 at 67–68. Issues arising out of the administration of this Plan are not arbitrable. Id. at 9; Plaintiff's Exhibit 7.

11. The Plan was written by defendant and first put into effect on January 1, 1947, Plaintiff's Exhibit 2, at other plants of defendant around the country; later, the Plan was adopted for use at defendant's Houston area plant when that plant opened in 1952. Eventually, the Plan was incorporated into the collective bargaining process and is part of the presently applicable agreement. Plaintiff's Exhibit 1. Similar plans are in effect in other local plants of other companies and throughout the industry. Defendant's Exhibits 18, 19, 20 and 21.

12. The Plan describes an apparatus designed by defendant to provide covered employees such as plaintiff with permanent disability benefits prior to retirement to afford income security in light of disabilities encountered, i. e., to establish a minimum level of income while taking into consideration other sources of income. Disability benefits under the Plan are paid for solely by defendant.

13. The Plan is administered by an Employee Relations Committee ("Committee") consisting of three of defendant's employ-

ees appointed by defendant. Plaintiff's Exhibit 2 at 3. The Committee is charged with the responsibility of promulgating rules and regulations to carry out the provisions of the Plan and is empowered to determine conclusively all questions pertaining to the Plan's administration, interpretation and application. *Id.*

### 2. Definitions and Formulas for Offsetting

14. The Plan defines "government permanent disability benefit" as follows:

"'Government permanent disability benefit,' as used herein, shall mean any pension, benefit or allowance being paid or available to a disabled person on account of permanent disability under any law other than war veterans' legislation."

Plan, Part II(f), Plaintiff's Exhibit 2 at 4.

15. The Plan formularizes the amount of money payable as a monthly benefit to disabled employees prior to normal retirement as follows:

"[T]he amount by which the larger of the two amounts set forth below *exceeds the sum of the income being paid* or available to the disabled former employee *from* his annuities and *his government permanent disability benefit.* If a disabled former employee fails, after requests by the Company at any time, to process diligently claims for a government permanent disability benefit, the Company may estimate the amount of such benefit and assume its availability for purposes of determining the Permanent Disability Benefit payable under this Part V." (emphasis added)

Plan, Part V, § 1(b), Plaintiff's Exhibit 2 at 12–13. The term "income being paid" is nowhere defined.

### 3. Application of the Plan's Offset Provision to Plaintiff

16. Plaintiff was placed on permanent and total disability for purposes of the Plan effective May 16, 1971. Defendant is cur-rently deducting or offsetting from benefits that plaintiff would otherwise receive from the Plan the sum of $147.03 monthly as an offset for workmen's compensation received by plaintiff pursuant to his lump sum payment settlement with defendant's insurer. Defendant will continue to so deduct or offset until the lump sum of $14,719.09 has been offset. Defendant is currently deducting or offsetting from the amount of benefits plaintiff would otherwise receive under the Plan the sum of $185.90 monthly on account of Social Security disability benefit payments being made to plaintiff.

17. Plaintiff has demonstrated by a preponderance of the credible evidence the following facts concerning the administration, interpretation and application of the Plan.

18. First, the Committee has failed to establish or promulgate appropriate rules and regulations for carrying out the provisions of the Plan relating to offset.

19. Second, the Committee has acted inconsistently when determining whether to offset or deduct from a disabled employee's allowable company permanent disability benefit.

20. Third, the Committee has acted arbitrarily in applying the offset formula to determine various disabled employees' company disability entitlements.

21. Plaintiff filed a compensation claim concerning his prior back injury. He received compensation for that claim but no offset was taken. Other employees who had received compensation for two injury claims would in some instances have both claims offset, and in other instances neither claim offset, for no credible reason that could be articulated on the record.

22. Indeed, there is no credible evidence on the record which shows that the Committee convened to consider whether to offset plaintiff's allowable Plan disability benefits in view of random prior decisions imposing no offset. *Cf.* Defendant's Exhibit 7; Plaintiff's Exhibit 10.[1]

---

**1.** While the record indicates that the Committee determined that plaintiff's application for

disability benefits should be approved, Defendant's Exhibit 7, such a determination does not,

## II. CONCLUSIONS OF LAW

1. Jurisdiction and venue are proper in this Court. 28 U.S.C. §§ 1332, 1391.

### A. Collateral Source Rule and the Plan

■ 2. The Collateral Source Rule ("Rule") does not invalidate as a matter of law the "offset" provision in Part V, § 1(b), of defendant's Plan. Plaintiff's Exhibit 2 at 12–13. The Rule has been characterized as an exclusionary rule of evidence designed to prohibit as inadmissible testimony concerning benefits which an injured plaintiff might obtain from collateral sources. *Missouri-Pacific R. Co. v. Willingham*, 348 S.W.2d 764, 766 (Tex.Civ.App.—Waco 1961, *no writ*) *cited in Traders & General Ins. Co. v. Reed*, 376 S.W.2d 591, 593 (Tex.Civ.App. —Corpus Christi 1964, *writ ref'd n. r. e.*); *see generally* Comment, *The Texas Collateral Source Rule: A Critical Survey*, 54 Texas L.Rev. 791 (1976).

In both the Texas and the federal courts, the rationale and application of the Rule are premised in an employee-tort victim case upon the theory that a tortfeasor is not entitled to mitigate damages by setting off compensation received by the employee from an independent source. *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972); *cf.* Annotation, *Collateral Source Rule: Receipt of Public or Private Pension as Affecting Recovery Against a Tortfeasor*, 75 A.L.R.2d 886 (1961).

3. The instant Plan does nothing in this case to assist defendant, as an employer, in mitigating any responsibility as a tortfeasor. *Haughton v. Blackships, Inc., supra*, 462 F.2d at 791. Applying the Rule is inappropriate in this case since plaintiff has failed to demonstrate by a preponderance of the evidence either that defendant committed a tort against plaintiff or that plaintiff's awards from social security and workmen's compensation, or his scheduled allocation of company disability benefits, are in the nature of damage recoveries, as opposed to benefits being paid without consideration of fault.

4. There being no issue of mitigation of damages in the instant case, the Rule does not apply to either Social Security benefits or Workmen's Compensation awards. Indeed, since the offset clause of Part V, § 1(b) of the Plan is triggered by its literal wording only when an employee such as plaintiff is receiving an annuity or government permanent disability benefit, and not in any tort damage award situation, this provision of the Plan has no nexus to, and is therefore not controlled by, the Rule. *Cf. Tyler v. N. Y. Tel. Co.*, 192 F.Supp. 52 (S.D.N.Y.1961); Annotation, *Rights and Liabilities as Between Employer and Employee With Respect to General Pension or Retirement Plan*, 42 A.L.R.2d 461 (Supp. 1975).

### B. Garnishment and the Plan

■ 5. The offset provisions of the Plan do not constitute the "garnishment" of an injured employee's compensation award so as to violate Texas Workmen's Compensation Laws. Tex.Rev.Civ.Stat.Ann. art. 8306, § 3.

■ 6. It should be noted preliminarily that offsets against state workmen's compensation awards are permitted as a matter of federal law under the Social Security benefit scheme, 42 U.S.C. § 424a. This federal statute, which was invoked in the instant case, Finding of Fact 7, *supra*, has been upheld as constitutional and not violative of Fifth Amendment Due Process. *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

■ 7. Garnishment under Texas law is a proceeding or process whereby money, owed by one person (garnishee) to another (debtor), is applied to the payment of a debt owed by the debtor to a third person by means of process issuing against the debtor and the garnishee. *Blanks v. Radford*, 188

---

in and of itself, demonstrate that the Committee further made a determination in accord with Plan standards as to applying the offset provision. Indeed, in view of previous deci-

sions not to offset in certain cases, the evidence demonstrates that there is no connection between approving a disability connection and evaluating eligibility for no offset.

S.W.2d 879, 885 (Tex.Civ.App.—Eastland 1955, *writ ref'd w. o. m.*).

■ · 8. The Plan does not garnish any of the compensation award paid to plaintiff in this case. That award was paid in full as part of a settlement. Finding of Fact 5, *supra*. Rather, defendant has withheld benefits payable under the Plan until such time as the gross amount of the claim has been paid out.

Neither can it be argued that the Plan's offset provision constitutes a garnishment of company disability benefits payable under the Plan. Benefits are payable only in conformity with the conditions imposed by the Plan and do not constitute a debt owing until such time as the conditions of the Plan are satisfied. Defendant therefore does not garnish benefits because they are not withheld for the benefit of a third person.

9. Even if it could be said that a deduction or offset of private disability benefits such as is effected by the instant Plan constitutes a "taking" of an injured employee's workmen's compensation award, which has not been proved on this record, such a scheme would not violate Texas law. *Dean v. Safety Cas. Co.*, 190 S.W.2d 750 (Tex.Civ.App.—Ft. Worth 1945, *writ ref'd w. o. m.*); *Western Cas. Co. v. Hunt*, 69 F.2d 129 (5th Cir. 1934); *cf. Pinkus v. Southern Farm Bureau Cas. Ins. Co.*, 292 F.Supp. 141, 146 (E.D.Ark.1968).

### C. Scope of "Government Permanent Disability Benefits"

10. The term "government permanent disability benefit" used in the Plan clearly contemplates both Social Security disability benefits and Workmen's Compensation claim awards within its meaning. Plaintiff's Exhibit 2 at 4; Finding of Fact 14, *supra*. Disability benefits paid under either

of these legislative schemes fits within the definition of "any benefit or allowance" payable "under any law". Plan, Part II(f); *cf. Richardson v. Belcher, supra*, 404 U.S. at 85–86, 92 S.Ct. 254 (Douglas J., dissenting) (listing all known benefits payable under law).

11. The failure of the Plan to include specifically these two types of benefit programs within the definition of "government permanent disability benefits" violates neither federal law nor Texas contract law, *Connecticut Gen. Life Ins. Co. v. Craton*, 405 F.2d 41, 46 (5th Cir. 1968), and does not invalidate that term as it has been applied by defendant in the instant case.

### D. Meaning and Scope of the Offset Provision

12. Despite the legitimacy of its definition by defendant, applying the term "government permanent disability benefits" straightforwardly is impeded by the wording of the offset provision, Plan, Part V, § 1(b).

13. The Plan contemplates that such benefits will be offset against other benefits, all of which are classified as "income being paid" to a disabled employee such as plaintiff. The concept of "offsettable benefits" therefore fits within, and is intertwined with, the larger concept of "income" to a disabled employee. However, this larger concept is nowhere defined in the Plan or the Contract. Finding of Fact 15, *supra*.[2]

14. One conceptual definition applicable to the phrase "income being paid" is money paid to a disabled employee which he is not prohibited or restricted from spending for his own purposes and which is not otherwise required by law to be spent in a prescribed manner. Another definition, the one im-

---

**2.** Applying a conventional Income Tax Code definition of the term "income" as being "income from whatever source derived", 26 U.S.C. § 61; *C. I. R. v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955), is inappropriate in this case since such benefit sources as workmen's compensation claims are not included within the definition of gross income and are not taxable. 26 U.S.C. § 104.

Further, the term "wages", as used in the Income Tax Code for purposes of determining money eligible for taxation under the Federal Insurance Contributions Act, does not include company accident disability benefit payments within its definition. 26 U.S.C. § 3121(a)(2)(B).

plicitly adopted by defendant in this case, includes within the definition of "income being paid" not only money retained by a disabled employee for his own personal use but also for all dollars paid out in his name or as a result of litigation concerning his disability. Other definitions are reasonable and defensible, considering the choice and placement of words in the Plan's offset provision.

■ 15. Regardless of which definition is most appropriate, the gravity of having more than one reasonable construction applicable to a clause in this Plan is that the clause, being therefore ambiguous, must be strictly construed against its author. *Harris v. Phillips Pipe Line Co.,* 517 S.W.2d 361, 364 (Tex.Civ.App.—Austin 1975, *writ ref'd n. r. e.*), *citing Houston Pipe Line Co. v. Dwyer,* 374 S.W.2d 662, 665 (Tex. 1964); *cf. Matthews v. Swift & Co.,* 465 F.2d 814, 819–20 (5th Cir. 1972).

■ 16. The construction most favorable to the plaintiff, and the one which the Court adopts in this case, is the first definition cited above, Conclusion of Law 14, *supra:* "income being paid" means money paid to a disabled employee which he is not prohibited or restricted from spending for his own purposes and which is not otherwise required by law to be spent in a prescribed manner.

17. Such a construction comports more accurately than does the one applied by defendant in the instant case with defendant's stated premises for the Plan, which are: (1) to supplement a disabled employee's other disability benefits without affording double recovery, so as (2) to ensure that the supplement affords income security to such an employee. Thus, defendant may not construe the term "income being paid"

blanketly to include all dollars paid out to, or on account of, plaintiff, regardless of whether plaintiff ever realizes the personal use of such dollars or not.

■ 18. In the instant case, the term "income being paid" as construed therefore precludes defendant from offsetting those portions of plaintiff's compromised Workmen's Compensation award which constitute attorney's fees or medical expenses, and that portion of the Social Security benefit award pertaining to attorney's fees. Findings of Fact 5 & 8, *supra;* Plaintiff's Exhibits 4 & 9. None of these sums constitutes income that plaintiff would otherwise receive while working, and he would not have spent these sums or incurred the expenses but for the disability.

19. In view of the wording of the judgment and the statutory control over attorney's fees and medical expenses to be exercised by Texas courts in compensation cases, *e. g.,* Tex.Rev.Civ.Stat.Ann. art. 8306, § 7d, and by the Secretary of Health, Education and Welfare in Social Security disability cases, 42 U.S.C. § 406(a), plaintiff exercised no meaningful control over this portion of either award. Such sums cannot be offset against plaintiff's total benefits owing under the Plan.[3]

### E. Application of the Plan's Offset Provision to Plaintiff

### 1. Introduction; Committee Authority Under the Plan

20. Defendant's offset or deduction of "government permanent disability benefits" received by plaintiff in this case cannot stand for the further reason that the offset provision of the Plan has not been properly enforced or exercised in this case according to the evidence.

---

**3.** Of course, as defendant recognizes in its memoranda submitted to the Court, defendant will not continue to offset or deduct from plaintiff's allowable Plan disability benefits that amount presently representing the Social Security disability benefit in the event that the Social Security Administration discontinues such benefits upon re-examination of plaintiff's physical condition. *See* Finding of Fact 7, *supra.*

Additionally, the Court notes that the legality of dollar-for-dollar discounting by defendant of Social Security benefits may be in jeopardy if such discounting exceeds the amount of the original award made by the Social Security Administration and includes statutory cost-of-living increases in Social Security benefits. *See* Defendant's Exhibit 6.

21. The Plan vests sole authority for its administration, interpretation and application in defendant's Committee. Finding of Fact 13, *supra*. Such vesting of unilateral power under the Contract now in force is a lawful and permissible exercise of the power of each party to the Contract. *Leeds & Northrup Co. v. N. L. R. B.*, 391 F.2d 874, 877 & n. 6 (3rd Cir. 1968) *citing N. L. R. B. v. C & C Plywood Corp:*, 385 U.S. 421, 425, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967).

22. Given this power, the Committee could, generally speaking, exercise the power in such a manner as to forego offsetting or deducting government permanent disability benefits from allowable Plan disability benefits in certain cases, despite the mandatory wording of Part V, § 1(b). *Local No. 742, United Bhd. of Carpenters & Joiners v. N. L. R. B.*, 144 U.S.App.D.C. 20, 444 F.2d 895, 902 (1971). In other words, the Committee could decide not to offset and not violate the Plan.

### 2. Scope of Judicial Review

23. Thus, the Committee has the discretion to determine when and whether to offset. However, such discretion is not complete and unbridled. *March v. Greyhound Lines, Inc.*, 488 F.2d 278, 280 (5th Cir. 1974). Under Texas law as applied by the United States Court of Appeals for the Fifth Circuit in the *Marsh* case, 488 F.2d at 280 *citing Neuhoff Bros. Packers Management Corp. v. Wilson*, 453 S.W.2d 472 (Tex. 1970); *see Golden v. Kentile Floors, Inc.*, 512 F.2d 838, 847 (5th Cir. 1975), the exercise of Committee discretion can be overturned if "bad faith" is shown, 488 F.2d at 280, either by direct or indirect evidence of unreasonable requirements, refusal to consider favorable information, or the use of standards more strictly applied towards plaintiff than towards others similarly situated. *Id.*

24. The facts of this case as established by a preponderance of the credible evidence conclusively demonstrate that the decision to offset in this case was made in bad faith. Findings of Fact 17–22. The Committee has failed to promulgate rules or standards by which to determine when and whether to offset, pursuant to Part V, § 1(b), and in the absence of standards has arbitrarily and inconsistently interpreted and administered the offset provisions, according to the evidence. There is no showing of any decision as to offset having been made by the Committee in this case. Finding of Fact 22; *cf. Matthews v. Swift & Co., supra*, 465 F.2d at 818–19. Therefore, the standards for applying the offset provision have been more strictly applied towards plaintiff in this case than towards others similarly situated.

25. This showing of the Committee's bad faith does not automatically entitle plaintiff to the full payment of all benefits without offset. His rights in this case cannot exceed what is provided for in the Contract. *Smith v. Union Carbide Corp.*, 350 F.2d 258, 261 (6th Cir. 1965).

26. Plaintiff is not entitled as a matter of law to avoid an offset of Plan disability benefits in view of the validity of the offset provision, Conclusions of Law 2, 5 & 10, *supra*, and the legally valid definition of "government permanent disability benefits". Conclusions of Law 10 & 11, *supra*.

27. Plaintiff is not entitled automatically as a matter of Contract interpretation to avoid an offset. Rather, plaintiff is entitled to an appropriate interpretation and application of the Plan by the Committee as required by the Plan and the Contract. *Matthews v. Swift & Co., supra*, 465 F.2d at 821.

### F. Impact of the Matthews Doctrine

28. The *Matthews* doctrine was enunciated by the Fifth Circuit in a case arising out of a dispute over entitlement, in the first instance, to a rating of permanent disability. That issue is not presented in this case since defendant has already approved plaintiff's application for permanent disability benefits under the Plan. Nevertheless, the doctrine is fully applicable insofar as it establishes a standard by which Courts of the United States are to fashion relief in a case of this type. 465 F.2d at 821.

29. Thus, in accordance with the approach suggested by the Court of Appeals in *Matthews*, 465 F.2d at 821 & n. 11, the Court concludes that no final determination as to the propriety of offset should be made by the Court on this record. Rather, the Committee shall be required to determine plaintiff's eligibility under the Plan for no offset in the first instance after promulgating, and then applying, appropriate rules and regulations pertinent to offsetting disability benefits within the boundaries herein established.

### III. CONCLUSION

30. Therefore, the offset provisions of the Plan are valid and enforceable. Having been made in bad faith, defendant's determination to offset in this case cannot be upheld under the law. The Committee shall be required to promulgate appropriate rules and regulations pertaining to offset and shall be required thereafter to apply such rules and regulations to determine whether plaintiff's Plan disability benefits shall be subject to offset, and, if so, to calculate the appropriate amount of the offset. In no event shall the offset include sums previously designated to cover attorney's fees or medical expenses.

31. All Findings of Fact which are more properly characterized as Conclusions of Law are hereby adopted as such. All Conclusions of Law which are more properly characterized as Findings of Fact are hereby adopted as such.

32. Counsel are directed to confer and submit jointly within thirty (30) days a proposed final judgment in this case in accordance with the findings and conclusions set forth above.