Lelia MARTINEZ, Plaintiff-Appellant,

v.

SWIFT & COMPANY and Esmark, Inc.,
Defendants-Appellees.

No. 80–2853.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1981.

Decided Aug. 6, 1981.

Eva W. Tameling, Tameling & Associates, Hinsdale, Ill., for plaintiff-appellant.

Charles B. Wolf, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD and CUDAHY, Circuit Judges, and GRANT,* Senior District Judge.

GRANT, Senior District Judge.

On April 2, 1980, plaintiff-appellant Lelia Martinez filed a two-count complaint against defendants-appellees Esmark, Inc. and Swift & Company (Swift). Count I alleged breach of a pension contract by the appellees while Count II alleged misrepresentation. The district court granted the appellees' motion for summary judgment based upon the decision of Swift's Pension Board which had concluded that Martinez' husband was not entitled to receive pension benefits under the then existing plan. Martinez now appeals from this judgment.

I.

Appellant's husband, Joaquin Martinez, was an employee of Swift in Cuba from June 20, 1924 to October 17, 1960. In October, 1960, the Cuban government nationalized and expropriated all of Swift's assets and property, including funds reserved by Swift for the payment of pension benefits. Despite these actions, Mr. Martinez remained in his job, only now as an employee for the Cuban government.

Throughout the 36-year period Mr. Martinez was employed by Swift prior to the nationalization and expropriation, he was covered by Swift's Pension Plan. Eligibili-

* The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, sitting by designation.

ty requirements were set forth in Article V, Paragraph 2:

> 2. Every employee who shall have *completed twenty (20) years of continuous service*, shall have *attained fifty-five (55) years of age*, and *whose services have been terminated by the employer (as distinguished from retirement with the consent of the employer and the Pension Board under Paragraph 3 hereof) for reasons other than discharge for cause* (cause to be determined on a uniform basis nondiscriminatorily applied) shall be entitled to a pension to commence upon his or her actual retirement. "Discharge for cause" shall include but not be limited to discharge for dishonesty, excessive absenteeism or tardiness, fighting or gambling on company premises, insubordination, willful damage to property, conviction of a crime, incompetence, inability to perform work not due to total and permanent disability as determined by the Pension Board under Article VIII hereof, or violation of established company rules or a collective bargaining agreement to which the company is a party.

(emphasis added). Administering this Plan was a five-member Pension Board whose powers and responsibilities included the following:

> 6. The Pension Board shall have the sole power, duty and responsibility to direct the administration of the Pension Plan embodied in this Trust in accordance with the provisions herein set forth, and shall act as the majority of its members shall decide....

> 7. All decisions of the Pension Board as to the facts of any case and the meaning and intent of any provision in this Trust or of its application shall be final and conclusive....

The Pension Board concluded that the actions of the Cuban government did not constitute a "termination by the employer" within the meaning of Article V, Paragraph 2. Thus, none of the Swift employees in Cuba would be entitled to receive any pension benefits according to the language of the Plan. Presented with the unique cir-

cumstances of the nationalization and expropriation, the Pension Board did decide that all employees leaving Cuba and coming to the United States who otherwise qualify would be paid pension benefits. Those employees who remained there in the employ of the Cuban government would not receive pension benefits. Because Mr. Martinez did not leave Cuba but continued in his job as an employee of the Cuban government, he was denied pension benefits which otherwise would have been paid.

On May 28, 1975, Mr. Martinez died in Cuba. Mrs. Martinez came to the United States in late 1978. Since that time, she has been receiving full widow's pension benefits under the Pension Plan. These benefits and those discussed above were authorized by the Pension Board for Mrs. Martinez and others similarly situated for the reason that the extraordinary circumstances surrounding the nationalization and expropriation warranted compassion. The Board has continually maintained that it is under no legal obligation to make these payments.

Based on these events, Mrs. Martinez filed her action in federal court seeking a retroactive award of pension benefits allegedly due her husband from the time of the nationalization and expropriation in 1960, to his death in 1975.

## II.

■ This Court is bound by the decision of the Pension Board unless Mrs. Martinez can establish that it was "arbitrary, fraudulent or in bad faith." *Matthews v. Swift & Company*, 465 F.2d 814, 821 (5th Cir. 1972). *See also Wardle v. Central States, etc.*, 627 F.2d 820, 823–24 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) ("arbitrary and capricious in light of the language of the Plan"), quoting *Reiherzer v. Shannon*, 581 F.2d 1266, 1272 (7th Cir. 1978).

■ We find that there is ample support for the Pension Board's conclusion that the nationalization and expropriation did not constitute a "termination by the employer

[Swift]" within the meaning of the Pension Plan. The continued employment of Mr. Martinez in his job rationally supports the conclusion of no termination. The actions by the Cuban government rationally support the conclusion that Swift had not caused nor participated in the events affecting the status of Mr. Martinez' employment. We also find significant, as did the district court below, the Cuban government's seizure and control of the very funds that Swift had accumulated and reserved for the payment of pension benefits. All of these factors lend sufficient rational basis to the Pension Board's decision.

This Court finds no arbitrariness in the Pension Board's decision to make pension payments to those employees leaving Cuba and who otherwise satisfy all of the eligibility requirements. The unique nature of the circumstances involved in this case must be borne in mind in examining this question. Based on its rational conclusion of no termination by Swift as discussed above, the Pension Board could have justifiably denied pension benefits to all of its employees in Cuba, regardless of whether or not they left Cuba. But the Board elected to voluntarily compensate those employees who no longer were employed with Swift in Cuba out of a sense of compassion for the loss which they had suffered. We find it difficult to characterize such action as arbitrary or in bad faith, especially in view of the fact that the pension fund assets had been seized by and were in the control of the Cuban government. We further find no support in the record for Mrs. Martinez' argument that this decision was based on alienage.

For all of the foregoing reasons, we agree with the district court and find that the decision of the Pension Board was not "arbitrary, fraudulent [n]or in bad faith." Mrs. Martinez' misrepresentation claim in Count II of her complaint is also without merit. The granting of appellees' motion for summary judgment by the district court is therefore

Affirmed.