Jerry BUNN, Plaintiff,

v.

ESMARK, INC., Defendant.

No. 83 C 0136.

United States District Court,
N.D. Illinois, E.D.

Jan. 16, 1984.

Stephen Seliger, Chicago, Ill., H. Vincent McKnight, Ashcraft & Gerel, Washington, D.C., for plaintiff.

Leo Herzel, Alan N. Salpeter, Marc Gary, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiff Bunn filed the instant lawsuit alleging that he had been wrongfully denied disability pension benefits by defendant Esmark. Esmark subsequently filed a Motion for Summary Judgment which is now before the Court. For the reasons stated herein, defendant's Motion for Summary Judgment is hereby granted.

On July 7, 1953, plaintiff Jerry Bunn began working in the Processing Unit of Swift & Co.[1] in Washington, D.C., as an unskilled laborer. He worked in that unit until October 22, 1969 when the unit closed. On the date of the closing, Bunn received a separation allowance under the collective bargaining agreement of $2,920.20. He later received a letter from the Swift Pension Board informing him that because his "services terminated on October 22, 1969," he was entitled to a deferred retirement pension of $83.55 a month beginning on his 65th birthday.

On October 27, 1969, Bunn was asked to come to work at Swift's Washington Sales Unit which had remained open. Bunn's position at the Sales Unit was considered temporary until September 1, 1970 when he assumed the position of a truck driver. Bunn continued at the Sales Unit until September 16, 1977 when that unit terminated operations. On that date, Bunn received a check from Swift in excess of $2,000 representing unexercised vacation, one week's guarantee, and a separation allowance.

On September 19, 1977, Bunn suffered a stroke. Because of the stroke, Bunn was required to undergo physical therapy until February, 1978, during which period defendant extended Bunn's major medical insurance benefits although it states it was not required to do so.

In early 1979, Bunn's attorney wrote Swift to determine whether Bunn would qualify for disability benefits under the pension plan of the applicable collective bargaining agreement, the Driver's Contract. By return mail, Swift, through G.L. Colson of its Contract Administration office, informed Bunn's attorney that Bunn was not entitled to benefits under the Driver's Contract because he was not an employe at the time of the stroke.

In 1981, another attorney for Bunn wrote to defendant Esmark, Inc. inquiring about Bunn's eligibility for disability benefits. Ultimately, plaintiff's counsel was answered by Stephen Ward, the Pension Board's Secretary, who explained that when Bunn was rehired by Swift (in 1969) he was considered to be a new employe and that therefore at the time of his ultimate termination in 1977 he did not have the requisite ten years of credited service in to qualify for a disability pension.[2]

Following receipt of Ward's letter, Bunn filed the instant lawsuit. Thereafter, the Pension Board convened and denied Bunn's request for the same reasons as set out in the letter from Ward.

Defendant now contends that summary judgment should be entered in its favor. In support of its position, defendant furthers two arguments:[3] (1) the Esmark Pension Board rationally concluded as a matter of law that plaintiff was not entitled to a disability pension because he did not have the required ten years of credited service; and (2) the Pension Board's decision should be upheld because the undisputed evidence establishes that plaintiff suffered his disability after his employment had been terminated.

■■■ On review, the Court is bound by the decision of the Pension Board unless

---

1. Swift & Co. is a subsidiary of Esmark, Inc.

2. Article VIII of Esmark's Pension Plan provides in pertinent part:

    Any employe under normal retirement age who shall become disabled, other than temporarily, so as to be unable to perform the duties of any job available for him at the unit where employed, as determined in the sole discretion of the Pension Board, shall, *if such employe has completed ten (10) years or more of credited service prior to such disability,* be entitled to a disability retirement pension to commence upon retirement ... [emphasis added]

3. When defendant first brought its summary judgment motion, it also argued that the instant action was barred by a three-year statute of limitations. However, the statute of limitations argument has been withdrawn in light of *Jenkins v. Local 705 International Brotherhood of Teamsters,* 713 F.2d 247 (7th Cir.1983), which held that in cases under the Employee Retirement Income Security Act of 1974 (ERISA), an action for pension benefits should be governed by the appropriate state statute of limitations which here is ten years. Ill.Rev.Stat. ch. 110 ¶ 13–206 (1981).

plaintiff can establish that it was "arbitrary, fraudulent or in bad faith." *Martinez v. Swift & Company*, 656 F.2d 262, 263 (7th Cir.1981) (quoting *Matthews v. Swift & Company*, 465 F.2d 814, 821 (5th Cir.1972)). If the Pension Board's decision is "rationally supported," it must stand. *Matthews, supra* at 264. Furthermore, if the Pension Board does not address a particular issue in its decision, plaintiff must prove that the Board could not fairly and in good faith decide against him upon the evidence presented to the Court. *Matthews v. Swift*, 465 F.2d 814, 821 (5th Cir. 1972).

*The Lack of Ten Years Credited Service*

The specific ground upon which the Pension Board relied in denying plaintiff's request for benefits was plaintiff's lack of ten years credited service. Plaintiff argues, however, that he should have more than ten years credited service because the break in his employment in 1969 was not a separation but a layoff, which is not considered to be a separation from employment until in effect for two years or longer.

■ Plaintiff has plainly failed to demonstrate to the Court that it could prove that the decision of the Pension Board was arbitrary, fraudulent, or in bad faith. The evidence here presented so strongly supports the decision of the Board that no question of fact remains as to the rational basis for such decision. Accordingly, summary judgment may properly be entered in defendant's favor. *See, Gehrhardt v. General Motors Corp.*, 581 F.2d 7 (2d Cir.1978).

It is undisputed that, upon his 1969 termination from employment at Swift's Processing Unit when that department shut down, Bunn received a separation allowance in the amount of $2,920.20.

Paragraph 71 of the Amalgamated Meat Cutters Contract states:

Separation allowances shall be paid to employes having one (1) or more years credited service (including such employes in layoff status and whose plant seniority has not been forfeited) who are perma-

nently separated from the service ... arising out of the closing of a department or unit ... when it is not expected that they will be reemployed."

Article IV of the Esmark Pension Plan expressly states at paragraph 5(a) that:

Employes will no longer be considered participants hereunder and will lose all credited service ... if, prior to January 1, 1976, they:

(v) are separated from employment whether or not paid a separation allowance. *If subsequently re-employed, no credit will be given for prior service.* [emphasis added]

In light of the above, it would appear clear from the fact of the payment of the separation allowance that when Bunn was forced to leave his position at the Processing Unit he was not laid off but separated from employment. Plaintiff argues, however, that the payment of the separation allowance was erroneous and that the defendant actually only intended to lay off the plaintiff. Such a contention is not even remotely supported by the record.

When Bunn was first terminated, Swift apparently could not anticipate that he would be rehired in another unit. It therefore paid the separation allowance. Bunn was, however, rehired, albeit in a different unit, when one of the individuals there was unable to come to work. For some time, Bunn's status at the new unit was merely temporary. It was only after he had been at the new unit nearly one year that he was made a permanent employe.

Bunn's argument that payment of the separation allowance was erroneous is also flawed by the fact that at no time did Swift seek to recover the allowance after Bunn was rehired. In the opinion of this Court, it is unlikely that an employer such as Swift would erroneously pay out a substantial sum and, upon discovery of the error, not attempt to gain some form of recovery.

In addition to the above, the following evidence also augurs in favor of the Pension Board's decision: (1) Bunn's employment record explicitly states that Bunn was

separated from employment on October 22, 1969; and (2) a few months after his separation, the Pension Board sent Bunn a letter informing him of his deferred pension benefits in which it is noted that, according to Swift, his "services terminated on October 22, 1969." Based on all of the facts, it is evident that as a matter of law, the Pension Board's decision was not arbitrary, fraudulent, or in bad faith, but that it was rationally supported by the record.

In addition to his argument concerning the evidence before the Board, plaintiff also contends that the Pension Board's decision was procedurally flawed in that the Board delegated its authority over the pension decision to the Board's Secretary and then proceeded to "rubber stamp" that decision.

■ Plaintiff correctly argues that the terms of the Pension Plan preclude the Pension Board from delegating its authority without promulgating written guidelines to define the scope of that delegated authority. However, to assume that there was such a delegation of authority merely because the Pension Board's conclusion was the same as that initially stated by Steven Ward, the Secretary of the Board, is an unsubstantiated leap of faith.

Ward, by letter of June 9, 1981, informed Bunn that because he had been separated from employment in 1969 and had received a separation allowance at that time, he could not qualify for disability benefits. That the Pension Board reached the same conclusion does not, however, indicate that it did not exercise its discretion independent of Mr. Ward's decision. Indeed, the minutes of the Pension Board on the day Bunn's case was considered state that, "The Board reviewed the records involved and after considerable discussion, [Board Member] Mr. Magner proposed a resolution that Mr. Bunn's second period of employment was as a new employe ..." Notwithstanding the evidence discussed above which lends clear support to the rationality of the Pension Board's decision, plaintiff would apparently require the Pension Board to rely upon different facts than those cited by Mr. Ward to support its conclusion in order to prevent the Board's decision from being a "rubber stamp." This Court cannot accept plaintiff's position.

Even viewed in a favorable light, plaintiff's arguments have no support whatsoever in the record. While plaintiff would urge the Court to hold that Bunn's separation was a temporary layoff, that the payment of the separation allowance was an error, and that the Pension Board's decision was but a rubber stamp of an unauthorized decision of the Secretary of the Board, the undisputed evidence before the Court proves otherwise and mandates the Court to conclude that the plaintiff cannot demonstrate that the Board's decision was arbitrary, fraudulent, or in bad faith. For this reason, summary judgment must be granted for the defendant.

## The Suffering of the Disability After the Termination of Employment

Were plaintiff somehow able to demonstrate that the Pension Board's decision was somehow arbitrary, fraudulent, or in bad faith, he nevertheless would be unable to prove his eligibility for disability benefits as, at the time of the onset of the disability, Bunn was no longer an employe of defendant.

Article VIII of the pension plan specifies that, "Any *employe* under normal retirement age who shall become disabled, other than temporarily, so as to be *unable to perform the duties of any job available to him at the unit where employed* [emphasis added] ..." shall receive a disability pension if he or she has accumulated ten or more years of credited service. Under Article IV, paragraph 2, an employe shall no longer be considered a participant in the plan if he or she is separated from employment.

As plaintiff correctly notes, the term "employe" has different meanings in different contexts within the pension plan. For example, the term "employe" is used in Article V, Part A of the plan to describe

individuals who are entitled to a retirement pension and who are thus no longer working. Such a usage, however, does not bind the Court to accept such a definition in all instances.

■ It is apparent to this Court that Article VIII of the plan contemplates the extension of disability benefits only to those individuals who are actually employed and working up to the time of the onset of the disability. The determination of disability is based upon whether the individual could perform the duties of any job *"available to him at the unit where employed."* Thus, only if there is a job available could an individual be considered disabled so as to qualify for benefits. In the case at bar, no job was available to plaintiff because the unit he had worked at was no longer open and he had been separated from employment. Clearly, under the terms of Articles IV and VIII, even if plaintiff had accumulated ten years of credited service, at the time of his disabling stroke he was not an "employe" eligible for benefits.

Plaintiff contends that the failure of the Pension Board to specifically address this issue in its decision precludes it from being a basis for denial of the benefit. However, as plaintiff must not only prove that a Pension Board's decision was flawed but also that the Board *could not* "fairly and in good faith" decide against plaintiff, his argument is without merit. *Matthews v. Swift*, 465 F.2d 814, 821 (5th Cir.1972). If the Pension Board had found that plaintiff had accumulated the requisite credited service, under the terms of the plan it nevertheless would have been required to find plaintiff ineligible because he was no longer an employe under Article VIII. Plaintiff therefore has failed to sustain his burden.

## CONCLUSION

For the reasons stated herein, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.